LISA L. RUSSELL, Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
DEVON L. FLANAGAN, Senior Trial Attorney
ANGELA MO, Trial Attorney
KAMELA A. CASCHETTE, Trial Attorney
CHRISTIAN CARRARA, Trial Attorney
150 M St. NE, Washington, D.C. 20002
Tel: (202) 305-0201 (Flanagan); (202) 514-1707 (Mo);
   (202) 305-0340 (Caschette); (202) 305-0217 (Carrara)
Email: Devon.Flanagan@usdoj.gov; Angela.Mo@usdoj.gov
      Kamela.Caschette@usdoj.gov; Christian.Carrara@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>VERNON D. MILLER, individually and d/b/a Dutch Creek Farm Animal Park,<br><br>*Defendant*. | Case No. 1:24-cv-00448-HAB-SLC<br><br>**CONSENT DECREE** |

     This Consent Decree is entered into by and between Plaintiff, the United States of America ("United States"), and Defendant, Vernon D. Miller, individually and doing business as Dutch Creek Farm Animal Park ("Miller") (collectively, the "Parties"), who state as follows:

     WHEREAS, Miller held a class "C" license, number 32-C-0224, issued by the United States Department of Agriculture ("USDA") to exhibit and deal in animals as defined in the Animal Welfare Act ("AWA" or "the Act"), 7 U.S.C. § 2131 *et seq*.;

     WHEREAS, Miller owns and operates a facility called the Dutch Creek Farm Animal Park located at 6255 North 1000 West, Shipshewana, Indiana 46565, in LaGrange County

("Facility");

WHEREAS, on October 9, 2024, USDA served Miller with an Official Notice of 21 Day Suspension of License 32-C-0224 ("License Suspension"). The License Suspension suspended Miller's class "C" license for 21 days, expiring on October 30, 2024. During the period of a suspension, "[i]t is a violation of the Regulations [of the AWA] to buy, sell, transport, exhibit, or deliver for transportation, any 'animal' as the term is defined in the Act and the Regulations";

WHEREAS, on October 23, 2024, the United States filed a complaint against Miller, alleging violations of the AWA and its implementing regulations and standards and seeking preliminary and permanent injunctive relief, ECF No. 1 ("Complaint");

WHEREAS, the Complaint alleged pursuant to 7 U.S.C. § 2159 that Miller had placed and, at the time of the Complaint, was placing the health of animals at his Facility in serious danger in violation of the AWA and its regulations and standards. The Complaint also alleged pursuant to 7 U.S.C. § 2146(c) that Miller had violated the AWA and its regulations and standards in the following ways: (1) Miller failed to provide adequate veterinary care; (2) Miller failed to provide sanitary housing, food, and water conditions; (3) Miller failed to provide safe and hospitable housing and living conditions; (4) Miller exposed animals to psychologically distressing conditions; and (5) Miller failed to create and maintain complete and accurate records;

WHEREAS, also on October 23, 2024, the United States filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction asking the Court to order Miller to—among other things—not exhibit, breed, acquire (by purchase or transfer) or dispose of (by euthanasia, sale, or transfer) any AWA-regulated animal at the Facility without the consent of the United States or an order from the Court, ECF Nos. 2-3;

WHEREAS, on October 28, 2024, the Court granted the United States' Motion for TRO and set a briefing schedule for the Motion for Preliminary Injunction, ECF No. 8;

WHEREAS, on October 30, 2024, USDA filed an administrative complaint before the Secretary of Agriculture alleging that Miller violated the AWA and its regulations and standards, AWA Docket No. 25-J-0015;

WHEREAS, the Parties moved to extend the briefing schedule on the Motion for Preliminary Injunction and the effective date of the TRO, ECF No. 14, which the Court granted on November 1, 2024, ECF No. 15, keeping the TRO in effect until December 2, 2024;

WHEREAS, on November 13, 2024, Miller filed a Response to the United States' Motion for TRO and Motion for Preliminary Injunction, ECF No. 22;

WHEREAS, on November 29, 2024, Miller filed an Answer to the United States' Complaint, ECF No. 34;

WHEREAS, the TRO expired on December 2, 2024;

WHEREAS, on December 10, 2024, Miller filed an Answer and Defenses to the USDA's administrative complaint in AWA Docket No. 25-J-0015;

WHEREAS, on January 24, 2025, Miller entered into a Consent Decision with USDA to resolve its administrative complaint;

WHEREAS, the administrative Consent Decision terminated Miller's class "C" license, number 32-C-0224, effective January 24, 2025;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED,

ORDERED, AND DECREED as follows:

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331 and 1345 and 7 U.S.C. § 2146(c) (actions arising under the AWA), and over the Parties. Venue lies in the Northern District of Indiana and the Fort Wayne Division pursuant to 28 U.S.C. § 1391, 7 U.S.C. § 2159(a), and N.D. Indiana Local Rule 3-1(a) because the Defendant, Miller, resides and does business in this district and division and a substantial part of the events or omissions giving rise to the claims occurred in this district and division. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Miller consents to the Court's jurisdiction over him, this Consent Decree, and any such action to enforce it, and to venue in this judicial district and division.

2. The obligations of this Consent Decree apply to and are binding on the United States and on Miller and any of his agents, employees, successors, assigns, or other entities or persons otherwise bound by law, directly or through any corporate or other device.

3. No transfer of ownership or operation of Dutch Creek Farm Animal Park shall relieve Miller of his obligation to ensure that the terms of this Consent Decree are implemented.

4. Miller shall provide a copy of this Consent Decree to all employees, officers, or agents whose duties might reasonably include compliance with any provision of this Consent Decree. In any action to enforce this Consent Decree, Miller shall not raise as a defense the failure to provide a copy of this Consent Decree to any employee, officer, or agent or the failure of any of the employees, officers, or agents to take any actions necessary to comply with the provisions of this Consent Decree.

5. Miller will not apply for any USDA license or registration for at least two years following the termination of his license. On or after January 24, 2027, Miller may apply for a

USDA license or registration.

6. During any time that Miller does not hold a valid and effective USDA license or registration, Miller will refrain from any activity that would require a USDA license or registration, including buying, selling, transporting, exhibiting, or delivering for transportation, any AWA-regulated animal, under any circumstances, whether on his behalf or on the behalf of another individual or entity, and will ensure that his agents, employees, or others acting at his direction or for his benefit refrain from any activity that would require a USDA license or registration on his behalf or on behalf of Dutch Creek Farm Animal Park. Nothing in this agreement prohibits Miller from buying or owning personal pets; buying, selling, or owning animals used and intended for use solely for agricultural purposes; or engaging in breeding, dealing, or exhibition that does not require a license pursuant to 9 C.F.R. § 2.1(a)(3) or the latest version of the Animal and Plant Health Inspection Service document entitled "Licensing and Registration Under the Animal Welfare Act: Guidelines for Dealers, Exhibitors, Transporters, and Researchers" (current version attached and incorporated into this Consent Decree as Appendix A).

7. At any time that Miller does not hold a valid and effective USDA license or registration, he consents to USDA inspectors or officers accessing the Facility at any time and in any manner that members of the general public are invited onto the property, in order to monitor for compliance with the AWA and this agreement. Additionally, during any time that Miller does not hold a USDA license or registration, he will:

    a. maintain records of the acquisition and disposition of any dogs and wild or exotic

animals,[1] and

b. produce copies of such acquisition and disposition records to the United States in the manner described in Paragraph 10 or provide access for USDA officials to physically review such records by April 1, 2025 and every three months thereafter.

8. If Miller applies for a new USDA license or registration during the effective period of this Consent Decree, Miller shall notify counsel for the United States in writing within seven days of submitting such application.

9. If Miller applies for and obtains a new USDA license or registration, during any time that he holds such license or registration, he shall:

a. Create and maintain accurate and complete records for all AWA-regulated animals owned, held, leased, or otherwise in his possession or under his control or purchased, acquired through birth or any other means, transported, sold, euthanized or disposed of as required by 9 C.F.R. § 2.75. Such records must be maintained while the animals are owned, held, leased, or otherwise possessed or controlled by Miller and for one year following any animal's death, euthanasia, or other disposal, in accordance with 9 C.F.R. § 2.80;

b. Comply with 9 C.F.R. § 2.40 by ensuring that all AWA-regulated animals present

---

[1] Pursuant to 9 C.F.R. § 1.1, "[w]ild animal means any animal which is now or historically has been found in the wild, or in the wild state, within the boundaries of the United States, its territories, or possessions. This term includes, but is not limited to, animals such as: Deer, skunk, opossum, raccoon, mink, armadillo, coyote, squirrel, fox, wolf." "Exotic animal" means any animal not identified by name in the definition of "animal" in 9 C.F.R. § 1.1 and "that is native to a foreign country or of foreign origin or character, is not native to the United States, or was introduced from abroad. This term specifically includes animals such as, but not limited to, lions, tigers, leopards, elephants, camels, antelope, anteaters, kangaroos, and water buffalo, and species of foreign domestic cattle, such as Ankole, Gayal, and Yak." 9 C.F.R. § 1.1.

at the facility are provided with adequate veterinary care, including daily observations to assess their health and well-being; timely and accurate communication of any problems of animal health, behavior, or well-being to the attending veterinarian; and the use of appropriate methods to prevent, control, diagnose, and treat diseases and injuries;

c. Ensure that all dogs at the Facility are provided with adequate veterinary care including the provision of all required vaccinations, sampling and treatment of parasites and pests, annual physical examinations, and preventative care to ensure healthy and unmatted hair coats, properly trimmed nails, and clean and healthy eyes, ears, skin, and teeth, pursuant to 9 C.F.R. § 3.13(a);

d. Maintain complete and legible written veterinary records for any AWA-regulated animal assessed or provided treatment;

e. Ensure that all AWA-regulated animals are held in facilities or enclosures that are in good repair, provide appropriate shelter, are large enough to meet the regulatory requirements and allow for normal social and postural adjustments, and prevent animal escapes in accordance with 9 C.F.R. §§ 3.52(b), 3.53(a)(1), 3.6(a)(2), 3.78(b) & (c), 3.80(b)(1), 3.125(a), 3.126(d), 3.127(b), (c), & (d), 3.128, 3.153(a) & (b), and 3.158(c), and ensure that all AWA-regulated animals are housed compatibly in accordance with 9 C.F.R. §§ 3.133, 3.160(b), and 3.7;

f. Clean and sanitize all enclosures and shelters as often as required by the AWA regulations and standards, in accordance with 9 C.F.R. §§ 3.1, 3.11, 3.50, 3.56, 3.75, 3.84, 3.125, 3.131, 3.150, and 3.158, and ensure that all AWA-regulated animals are held in facilities or enclosures that are sanitary, have proper drainage,

      do not contain excess feces or potentially hazardous trash or debris, and do not contain pests or wild animals that can spread disease, in accordance with 9 C.F.R. §§ 3.84(a), 3.127(c); 3.131(a), (c) & (d), and 3.158(a)(1);

  g. Ensure that all AWA-regulated animals have access to clean, potable water at all times and sufficient quantities of clean, uncontaminated, and palatable food each day, and ensure that all containers used to hold food or water, including tubes used to convey food into an enclosure, are cleaned and sanitized at least every 14 days, in accordance with 9 C.F.R. §§ 2.131(b)(1), 3.1(e), 3.75(e), 3.82(a), 3.84(b), 3.127(c), 3.129(a) & (b), 3.130, 3.150(e), 3.155(b), and 3.156.

10. Any copies of records or written notice sent to the United States pursuant to this agreement shall be sent via email to ac.cas.mailbox@usda.gov, devon.flanagan@usdoj.gov, kamela.caschette@usdoj.gov, and christian.carrara@usdoj.gov or mailed to:

    U.S. Department of Justice
    Wildlife and Marine Resources Section
    ATTN: Devon Flanagan, Chris Carrara, and Kamela Caschette
    4CON Mail Room 2.900
    150 M Street NE
    Washington, D.C. 20002

The Parties may agree in writing to modify the notification procedures in this Paragraph.

11. In the event that either Party seeks to modify the terms of this Consent Decree or in the event of a dispute arising out of or relating to this Consent Decree, the Party seeking the modification or raising the dispute shall provide the other Party with written notice of the proposed modification or claim. The Parties agree that they will meet and confer at the earliest possible time in a good-faith effort to achieve a resolution before seeking relief from the Court. The Parties agree that they may meet and confer by email.

12. The Order entering this Consent Decree may be modified by written stipulation

between the Parties filed with and approved by the Court. If the Parties are unable to agree regarding a proposed modification to the Consent Decree, the Party seeking the modification may seek relief from the Court and bears the burden of demonstrating that it is entitled to the modification for the reasons set forth in Federal Rule of Civil Procedure 60(a) or (b). This Consent Decree may be modified pursuant to the procedures and standards set forth herein as long as the Consent Decree is in effect.

13. If the Parties are unable to resolve any disputes arising out of or relating to this Consent Decree themselves (other than disputes related to a proposed modification of the Consent Decree, addressed above), the Party raising the dispute may seek relief from the Court. The Party seeking relief bears the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of this Consent Decree.

14. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or licenses, nor does it limit or affect any duty or obligation of Miller to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, permits, or Court orders.

15. This Consent Decree resolves the civil claims of the United States against Miller for the violations alleged in the Complaint, through the date of lodging this Consent Decree with the Court.

16. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the AWA, or relevant implementing regulations and standards, or under other federal laws, regulations, or license

conditions, except as expressly provided herein.

17. The United States expressly reserves the right to seek any other relief it deems appropriate for a future violation of this Consent Decree or applicable law by Miller, including but not limited to an action for statutory penalties, additional injunctive relief, and/or contempt.

18. Miller releases and forever discharges the United States—including but not limited to the United States Department of Justice, USDA, and any other federal agency and their agents, contractors, and employees, acting in their individual or official capacities—from any and all claims, rights or causes of action, damages, expenses and costs, known or unknown, which Miller, or his agents, employees, or successors, have or may have against these government agencies and third parties and/or their agents, contractors, and employees arising from, related to, or as a result of, any actions with respect to this litigation.

19. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to any violations of law by Miller, Miller shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 15.

20. Nothing in this Consent Decree shall be construed or offered as evidence in any proceeding as an admission or concession of wrongdoing, liability, or any issue of fact or law concerning the claims settled under this Consent Decree or any similar claims brought in the future by any other party. Except as expressly provided in this Consent Decree, neither of the Parties waives or relinquishes any legal rights, claims, or defenses it may have. This Consent

Decree is executed for the purpose of settling the United States' Complaint as to Miller, and nothing herein shall be construed as precedent having preclusive effect in any other context or as evidence of what constitutes compliance with the AWA or its implementing regulations or statutes.

21. This Consent Decree is not a license, or a modification of any license, under any federal, State, or local laws or regulations. Miller is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations and licenses; and Miller's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Miller's compliance with the Consent Decree will result in compliance with the AWA or with any other provisions of federal, State, local laws, regulations, or licenses.

22. This Consent Decree does not limit or affect the rights of the United States against third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Miller, except as otherwise provided by law.

23. The Parties shall bear their own costs of this action, including attorneys' fees.

24. This Consent Decree shall be binding upon the Parties as of the date upon which this Consent Decree is lodged with the Court, unless otherwise provided expressly herein. In the event that the Court declines to enter the Consent Decree, then the requirement to perform duties required by this Consent Decree shall terminate.

25. Unless otherwise specified, the terms of this Consent Decree shall remain in effect for a period of five years from the date that the Consent Decree is entered by the Court.

26. This Consent Decree constitutes the entire agreement among the Parties regarding

the subject matter of the Consent Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the Consent Decree herein.

27. The undersigned Parties and/or their representatives certify that they are fully authorized by the Party they represent to agree to the Court's entry of the terms and conditions of this Consent Decree and do hereby agree to the terms herein.

28. Upon entry of this Consent Decree by the Court, all counts of Plaintiff's Complaint shall be dismissed. Notwithstanding the dismissal of this action, the Court retains jurisdiction after dismissal to oversee compliance with the terms of this Consent Decree and to resolve any motions to modify or enforce such terms.

IT IS SO ORDERED.

_____
United States District Judge

Dated: January ____, 2025

So stipulated and agreed:

DATED: January 24, 2025

| | |
|---|---|
| TINA L. NOMMAY<br>ACTING UNITED STATES ATTORNEY | *(signature)*<br>William C. White, II<br>BOLES HOLMES WHITE LLC<br>1929 Third Avenue North; Suite 500<br>Birmingham, AL 35203 |
| DIRK D. DE LOR<br>Assistant United States Attorney<br>Northern District of Indiana<br>5400 Federal Plaza, Suite 1500<br>Hammond, Indiana 46320 | wwhite@bhw.law<br>Phone: 205-502-2000<br>Fax: 205-847-1285<br><br>*Attorney for Defendant* |

Telephone: 219-937-5500
Fax: 219-852-2770
E-Mail: Dirk.De.Lor@usdoj.gov

LISA L. RUSSELL
Deputy Assistant Attorney General
Environment & Natural Resources Division

 */s/ Devon L. Flanagan*
DEVON L. FLANAGAN
Senior Trial Attorney
ANGELA MO
Trial Attorney
KAMELA A. CASCHETTE
Trial Attorney
CHRISTIAN CARRARA
Trial Attorney
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
devon.flanagan@usdoj.gov
angela.mo@usdoj.gov
kamela.caschette@usdoj.gov
christian.carrara@usdoj.gov
Phone:   (202) 305-0201 (Flanagan)
         (202) 514-1707 (Mo)
         (202) 305-0340 (Caschette)
         (202) 305-0217 (Carrara)
Fax:     (202) 305-0275

*Attorneys for the United States of America*